UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| SANY AMERICA, INC., ) | |
| ) | |
| Plaintiff and ) | |
| Counter-Claim Defendant, ) | |
| ) | Civil Action No. |
| v. ) | 15-10572-FDS |
| ) | |
| TURNER BROTHERS, LLC, ) | |
| ) | |
| Defendant and ) | |
| Counter-Claim Plaintiff. ) | |
| _____) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SAYLOR, J.

This is an action for replevin and conversion involving a manufacturer's loan of a

construction crane to a potential customer. Jurisdiction is based on diversity of citizenship.

Plaintiff SANY America, Inc. loaned a crane to defendant Turner Brothers, LLC, a construction

contractor, for demonstration purposes. SANY attempted to sell the crane to Turner and

continued to allow Turner to use it during their negotiations. However, the parties failed to reach

a sales agreement due to a disagreement over the crane's price.

After the negotiations ended, SANY asked Turner for the crane's location in order to

arrange retrieval. However, before SANY retrieved the crane from Turner, it was severely

damaged while being operated at Turner's construction site. After removing the inoperable

crane from the site at its own expense, Turner notified SANY that it expected compensation for

the transportation expenses. When SANY refused to pay those expenses, Turner refused to

return the crane, held it as security for the transportation costs, and began to invoice SANY for daily storage costs.

SANY brought suit against Turner for replevin and conversion, and Turner counterclaimed for declaratory judgment and for damages pursuant to Mass. Gen. Laws ch. 106, § 2-711.  Turner has moved for summary judgment on SANY's replevin and conversion claims. For the following reasons, the motion will be denied.

I.      **Background**

The parties agree on nearly all of the material facts.  Accordingly, the following facts are either undisputed or where noted, drawn in the light most favorable to SANY, the non-moving party.

A.      **Factual Background**

SANY America, Inc. is a crane manufacturer incorporated in Delaware with a principal place of business in Georgia.  (Am. Compl. ¶ 1).  Turner Brothers, LLC is a Massachusetts-based contractor that uses cranes and other heavy equipment for construction projects.  (Turner Aff. ¶ 2).[1]

In August 2012, Turner purchased a forty-ton crane from SANY through a third-party dealer.  (*Id.* at ¶ 4).  After that purchase, Turner also discussed with SANY the potential purchase of a larger crane.  (*Id.*).  In September 2012, SANY loaned Turner a larger crane to use for demonstration purposes.  (Am. Compl. ¶¶ 13-14).  SANY hoped to ultimately sell the larger crane to Turner.  (*Id.* at ¶ 15).

The parties orally agreed to the loan and did not draft a written contract.  (Turner Aff. ¶ 4).  They did not discuss the length of the demonstration period or any restrictions on Turner's

---

[1] None of Turner's LLC members are citizens of Georgia or Delaware.  (Pl. Resp. Order to Show Cause).

use of the crane.  (*Id.*).  Turner used the crane for about a year while negotiating a potential

purchase price with SANY.  (*Id.* at ¶ 6).

Turner never accepted an offer to purchase the crane, and in November 2013, SANY and

Turner ended their negotiations due to a price dispute.  (*Id.* at ¶ 7).  Nonetheless, SANY allowed

Turner to continue using the crane for demonstration purposes even after the negotiations ended.

(*Id.* at ¶ 9).

On June 5, 2014, SANY notified Turner that it wished to retrieve the crane, and it asked

for the crane's location in order to arrange a pickup.  (*Id.* at ¶ 10).  However, SANY did not

direct Turner to stop using the crane.  (*Id.*).

Six days later, but before the parties finalized retrieval arrangements, the crane was

damaged while being operated at a Turner construction site in Revere, Massachusetts.  (*Id.* at

¶ 11).  The damage rendered the crane inoperable.  (*Id.*).  Turner immediately notified SANY of

the damage and requested that SANY promptly remove the crane from the construction site.

(*Id.*).

SANY responded on June 16, stating that it intended to hold Turner responsible for the

cost of removing and storing the crane until it could arrange retrieval.  (*Id.* at ¶ 13, Ex. G).

Turner responded by demanding that SANY remove the crane from the construction site at its

own cost. (Walsh Aff. ¶ 2, Ex. A).  On June 19, SANY rejected Turner's demand to remove the

crane.  (*Id.*, Ex. B).  A day later, Turner notified SANY that, according to its interpretation of the

Uniform Commercial Code, a seller who provides a buyer with goods on a demonstration basis

has engaged in a "sale on approval," and therefore SANY bore the risk of loss until the buyer's

acceptance.  (*Id.*, Ex. C).  Turner then transported the crane to a facility in Raynham,

Massachusetts, and notified SANY that it would be billed for the transportation and daily storage

costs.  (*Id.*).

Turner incurred $13,875 in removal and transportation costs.  (*Id.*).  On June 26, Turner

billed SANY for those costs, and informed SANY that it intended to hold the crane as security to

ensure payment.  (*Id.* at ¶ 3, Ex. D).  SANY did not pay Turner for the transportation costs, and

instead continued to demand that Turner return the crane.  (Turner Aff. ¶ 16; Walsh Aff. ¶ 4, Ex.

E).  Turner has refused to return the crane to SANY and has charged it $150 per day for storage

costs.  (*Id.*).

### B.      Procedural Background

SANY filed its original complaint in this matter on February 26, 2015, and it amended

the complaint on May 26, 2015.  The amended complaint asserts claims for replevin and

conversion.  In response, Turner counterclaimed, seeking a declaratory judgment and damages

pursuant to Mass. Gen. Laws ch. 106, § 2-711.

Turner has moved for summary judgment on SANY's replevin and conversion claims.

SANY has not moved for summary judgment.  However, in opposing Turner's motion, SANY

has asked the Court to dismiss Turner's counterclaims and enter judgment in its favor on the

replevin and conversion claims pursuant to Fed. R. Civ. P. 56(f).

## II.      Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when

the moving party shows that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[]

mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III.    Analysis

The amended complaint alleges that Turner committed replevin and conversion by wrongfully possessing the crane after SANY demanded its return.

Under Massachusetts law, a defendant is liable for conversion if he "intentionally or wrongfully exercise[s] acts of ownership, control or dominion over personal property to which he has no right of possession at the time . . . ." *In re Brauer*, 452 Mass. 56, 67 (2008) (citations omitted).  The First Circuit has articulated the elements of the tort somewhat differently, holding that a plaintiff alleging conversion under Massachusetts law must show that:

> (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused.

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993);

*see also Neelon v. Krueger*, 2015 WL 4647931, at *2 n.3 (D. Mass. Aug. 5, 2015) ("In cases

where a defendant had legitimate possession of property, for example, a bailee holding goods for

a bailor, Massachusetts law recognizes a further element that requires the plaintiff to have

requested the property's return and been denied.").

An action for replevin is available to plaintiffs in federal court pursuant to Fed. R. Civ. P.

64.  Under Rule 64, "[a]t the commencement of and throughout an action, every remedy is

available that, under the law of the state where the court is located, provides for seizing a person

or property to secure satisfaction of the potential judgment."  *Id.*  Under Massachusetts law, the

elements of replevin are satisfied where (1) the goods in question have a value greater than

twenty dollars, (2) the goods are unlawfully taken or detained, and (3) the owner or person

entitled to possession is deprived of the goods.  Mass. Gen. Laws ch. 247, § 7; *see also*

*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 806 F. Supp. 291, 295 (D.

Mass. 1992), *rev'd on other grounds*, 4 F.3d 90 (1st Cir. 1993).

Replevin and conversion are very similar intentional torts; essentially, they both require

that a defendant wrongfully possess or detain a plaintiff's tangible property.  *See Portfolioscope,*

*Inc. v. I-Flex Sols. Ltd.*, 473 F. Supp. 2d 252, 256 (D. Mass. 2007) (treating conversion and

replevin claims together because they "require an allegation of wrongful possession of tangible

property").  Accordingly, the Court will address the two claims together and focus on the core

issue of this dispute:  whether Turner wrongfully possessed the crane after SANY demanded its

return.

### A.      Turner's Motion for Summary Judgment

This entire dispute appears to turn on whether SANY's loan of the crane to Turner was a

"sale on approval," which is a transaction governed by section 2-326 of the UCC, or a bailment,

which is governed by common law.

If the loan is treated as a UCC sale on approval, it appears that Turner should prevail on its motion.  If the loan was a sale on approval, SANY retained the risk of loss until Turner approved and accepted the crane for purchase—which it never did.  Under that theory, when the crane became damaged, it would have been SANY's responsibility to remove it from the construction site.  Accordingly, Turner rightfully retained the crane as security until SANY reimbursed it for the removal and storage costs.

However, the analysis changes if the loan is treated as a bailment.  Under that theory, the loan would be governed by the common law of bailment rather than the UCC.  Under bailment law, it would have been the responsibility of the bailee (Turner) to return the crane once the bailor (SANY) requested its return.

SANY contends that its loan of the crane to Turner for demonstration purposes was a bailment.  According to SANY, that bailment turned into a conversion when Turner refused SANY's demand to return the crane unless it paid for the transportation and storage costs.

In its motion for summary judgment, Turner cites Mass. Gen. Laws ch. § 106, § 2-326(1)(a) for the proposition that "[u]nder the [UCC] . . . a seller who provides goods to a buyer for use on a demonstration basis has engaged in a 'sale on approval' . . . ." (Def. Mem. 8).  It then points to § 2-327 in support of its contention that "[i]n the absence of any agreement to the contrary . . . the risk of loss in a sale on approval remains upon the seller until the goods have been accepted." (*Id.*).  Turner contends that because it never accepted the crane for purchase, the risk of loss never passed from the seller SANY; therefore, SANY was responsible for removing the crane from the construction site.

However, the premise Turner relies on—that a seller who loans goods to a potential

buyer for demonstration purposes necessarily engages in a UCC sale on approval—appears to be

flawed for several reasons.  Beginning with the plain language of the statute, § 2-326 specifically

refers to a contract in defining a "sale on approval":

> (1)    Unless otherwise agreed, if delivered goods may be returned by the buyer
> even though they conform to the contract, the transaction is
>
> > (a)    a "sale on approval" if the goods are delivered primarily for use,
> > and
> >
> > (b)    a "sale or return" if the goods are delivered primarily for resale.

Mass. Gen. Laws ch. 106, § 2-326(1).[2]  In other words, § 2-326 classifies a "sale on approval" as

a type of agreement where the buyer retains the option to return purchased goods even if they

conform to the specific terms of the contract.

The plain language of § 2-327 also explicitly refers to a contract in detailing procedures

for "special incidents of sale on approval":

> (1)    Under a sale on approval unless otherwise agreed
>
> > (a)    although the goods are identified to the contract the risk of loss and
> > the title do not pass to the buyer until acceptance; and
> >
> > (b)    use of the goods consistent with the purpose of trial is not
> > acceptance but failure seasonally to notify the seller of election to
> > return the goods is acceptance, and if the goods conform to the
> > contract acceptance of any part is acceptance of the whole; and
> >
> > (c)    after due notification of election to return, the return is at the
> > seller's risk and expense but a merchant buyer must follow any
> > reasonable instructions.

Mass. Gen. Laws ch. 106, § 2-327(1).

Moreover, the Official Comments to § 2-326 support the statute's plain meaning because

they reiterate that a sale on approval presupposes a valid contract containing specific terms,

---

[2] "Sale or returns" are commonly referred to as consignments.

8

including price:

> The type of "sale on approval," "on trial" or "on satisfaction" dealt with involves a contract under which the seller undertakes a particular business risk to satisfy his prospective buyer with the appearance or performance of the goods in question.  The goods are delivered to the proposed purchaser but they remain the property of the seller until the buyer accepts them.  The price has already been agreed.  The buyer's willingness to receive and test the goods is the consideration for the seller's engagement to deliver and sell.

Mass. Gen. Laws ch. 106, § 2-326 (UCC Official Comment 1).  Accordingly, a "sale on approval" is a transaction involving a contract that binds the seller to deliver and sell to the buyer at a set price, unless the buyer, upon inspection and use of the goods, declines acceptance.

Here, the evidence demonstrates that the "transaction" between SANY and Turner did not involve the type of contract defined in §§ 2-326 and 2-327; in fact, there was no contract at all.  SANY and Turner failed to reach an agreement, much less one with specific terms like price or length of the demonstration period.  Accordingly, the crane could not "be returned by [Turner] even though [it] conform[s] to the [terms of the] *contract*;" there were no terms and there was no contract.  Mass. Gen. Laws ch. 106, § 2-326 (emphasis added).  Moreover, Turner has not explained how the crane could be "identified to the contract," where the parties did not reach an agreement at all.  Mass. Gen. Laws ch. 106, § 2-327.

As set forth in the comments to § 2-326, a "sale on approval" is a type of agreement where "[t]he price has already been agreed."  Turner, however, concedes that it failed to reach an agreement to purchase the crane from SANY *specifically because* they could not agree on a price.  Furthermore, SANY was never bound or "engage[d] to deliver and sell" the crane to SANY.  Instead, it appears that SANY was free to sell the crane to another buyer even during the period it was in Turner's possession.  In short, the transaction between SANY and Turner was

not a "sale on approval" as defined by the plain language of the Massachusetts statutes and the UCC's official comments.

Regardless of SANY's desire to ultimately sell the crane to Turner, their transaction appears to be a common-law bailment.  A bailment involves the delivery of a chattel from a bailor to a bailee, who can use and enjoy possession of the chattel free from control by the bailor, subject to the obligation to do so with care and to return the chattel in good order.  *Nash v. Lang*, 268 Mass. 407, 414 (1929).  That definition describes the transaction here:  SANY loaned the crane to Turner; it allowed Turner to use the crane with reasonable care; and it was entitled to demand return of the crane in good working order at any time.  In many respects, the circumstances are analogous to an automobile test drive, where a dealer permits a prospective customer to drive a new car in hopes of persuading the customer to buy it.

However, a bailor retains title to the chattel, and it can bring actions for replevin or conversion against the bailee if it refuses to return the chattel upon request.  *See Warren v. Ball*, 314 Mass. 350, 352-53 (1960) (noting that a bailor may bring an action for replevin to recover bailed goods still held by bailee after demanded return); *Atlantic Fin. Corp. v. Galvam*, 311 Mass. 49, 50 (1942) ("A bailor entitled to possession may maintain an action for conversion."); *see also Foley v. John H. Bates, Inc.*, 295 Mass. 557, 562 (1936) (dealer that loaned car to potential customer for indefinite period was entitled to reclaim possession at will); *Woburn Country Club, Inc. v. Woburn Golf & Ski Auth.*, 21 Mass. App. Ct. 259, 265-66 (1985) (noting that bailment ends when the bailor demands return of the goods).

Here, as early as June 18, 2014, Turner rejected SANY's demand to return the crane. Regardless of Turner's justifications at the time, SANY's loan of the crane to Turner was a

bailment, and once SANY demanded the crane's return, Turner was obligated to return it.[3]

Indeed, as discussed below, the undisputed facts appear to demonstrate that Turner committed

conversion as a matter of law because it refused to return the crane without a lawful justification.

### B.      SANY's Request for Summary Judgment under Rule 56(f)

SANY did not move for summary judgment on its replevin and conversion claims, nor

did it move for summary judgment on Turner's counterclaims.  However, in opposing Turner's

motion, it contends that there are no disputed material facts and that Turner is liable for replevin

and conversion as a matter of law.  Accordingly, SANY requests that the Court grant it summary

judgment pursuant to Fed. R. Civ. P. 56(f).

The undisputed facts demonstrate that SANY demanded return of the crane, which it

rightfully owned, and that Turner refused to return it without lawful justification.  Accordingly, it

appears that SANY is entitled to judgment as a matter of law on its replevin and conversion

claims.  *See* Mass. Gen. Laws ch. 247, § 7 (stating that a defendant is liable for conversion where

it has no lawful basis for "tak[ing] or "detain[ing]" the goods and where the plaintiff is "entitled

to their possession"); *Neelon*, 2015 WL 4647931, at *2 n.3 (noting that a defendant is liable for

conversion even where it "had legitimate possession of property, for example, a bailee holding

goods for a bailor" and where "the plaintiff [has] requested the property's return and been

denied").

Rule 56(f) requires courts to give "notice and a reasonable time to respond" to movants

before granting summary judgment to non-movants.  *See* Fed. R. Civ. P. 56(f).  Arguably, Turner

has had ample opportunity to respond to SANY's arguments in its reply brief and during the

---

[3] It is well-established that mistake of law is not a defense to conversion. *Evergreen Marine*, 4 F.3d at 95 (noting that an actor is "not relieved of liability . . . for conversion by his belief, because of a mistake of law . . . that he is entitled to immediate possession of the converted chattel").  Accordingly, even if Turner believed that the UCC rules for sales on approval were controlling, it committed conversion when it refused to return the crane to SANY.

hearing on its motion.  Nonetheless, SANY did not move for summary judgment, and Turner

relied almost entirely on the now-rejected UCC sale-on-approval argument in its briefing.

Accordingly, and based on the foregoing, Turner is hereby ordered to show cause within

21 days why SANY should not be granted summary judgment on its replevin and conversion

claims and on Turner's counterclaims.[4]  Otherwise, the Court will enter summary judgment for

SANY on its replevin and conversion claims and on Turner's counterclaims.[5]

## IV.  Conclusion

For the foregoing reasons, defendant Turner Brothers LLC's motion for summary

judgment is DENIED.  Turner is hereby ORDERED to show cause within 21 days why SANY

should not be granted summary judgment, both on its claims and Turner's counterclaims.

**So Ordered.**

<table>
<tr><td></td><td>/s/  F. Dennis Saylor</td></tr>
<tr><td></td><td>F. Dennis Saylor IV</td></tr>
<tr><td>Dated:  April 13, 2016</td><td>United States District Judge</td></tr>
</table>

---

[4] The order to show cause is not an invitation for Turner to revisit its UCC sale-on-approval argument or to dispute facts that it previously conceded were undisputed.  Rather, the Court is allowing Turner to file a supplemental brief to develop any additional legal arguments as to why it has not committed conversion and replevin as a matter of law.

[5] The parties will still need to address the issue of damages if the Court enters summary judgment for SANY.  A plaintiff who prevails on a conversion claim is entitled to elect either (1) repossession of the converted goods (with compensation for damages for loss of use of the goods during the period of detention), or (2) monetary damages measured by the value of the converted goods at the time of conversion, with interest from that time.  *See George v. Coolidge Bank & Trust Co.*, 360 Mass. 635, 640-43 (1971).